Guy Ruttenberg, Bar No. 207937
guy@ruttenbergiplaw.com
Bruce D. Kuyper, Bar No. 144969
bruce@ruttenbergiplaw.com
RUTTENBERG IP LAW,
A PROFESSIONAL CORPORATION
1801 Century Park East, Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
Facsimile: (310) 627-2260

*Attorneys for Plaintiff,*
*AMP Plus, Inc. d/b/a ELCO Lighting*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMP Plus, Inc. d/b/a ELCO Lighting,<br><br>Plaintiff,<br><br>v.<br><br>Nora Lighting, Inc.,<br><br>Defendant. | Case No. 2:24-cv-08460-MWC (BFMx)<br><br>**MEMORANDUM IN SUPPORT OF ELCO'S RENEWED MOTION FOR SUMMARY JUDGMENT OF LIABILITY**<br><br>**[UNREDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]**<br><br>Date:  September 4, 2026<br>Time:  1:30 p.m.<br>Courtroom: 6A<br>Judge:  Hon. Michelle Williams Court |

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................ 1

II.    BACKGROUND ......................................................................................... 1

       A.    ELCO Developed Its Patented Koto Product. ...................................... 1

       B.    ░░░░░░░░░░░░░░░░░░░░░░░░░░░░ ............ 3

       C.    ELCO Sues Nora for Willful Patent Infringement. ............................ 5

       D.    Nora Cannot Prove Its Counterclaims or Any Defenses ..................... 6

III.   LEGAL STANDARDS ............................................................................... 7

       A.    Summary Judgment ................................................................................ 7

       B.    Patent Infringement ............................................................................... 7

       C.    Invalidity ............................................................................................... 8

IV.    ARGUMENT .............................................................................................. 8

       A.    Nora's Pearl Infringes Claims 15 and 19. ........................................... 8

             1.   The Pearl Meets the Common Limitations [A] through [E] ........ 9

             2.   The Pearl Meets Common Limitation [F] ("Holder"). .............. 12

             3.   The Pearl Includes the Remaining Limitations of Claim 15. ..... 16

             4.   The Pearl Includes the Remaining Limitation of Claim 19. ....... 16

             5.   Nora Directly and Indirectly Infringes. .................................... 17

       B.    Claims 15 and 19 Are Not Invalid. ..................................................... 19

             1.   The Court Should Reject Nora's Invalidity Defense. ................. 19

             2.   The Claims Are Not "Obvious" Under § 103 ........................... 21

       C.    Summary Judgment Is Proper on Nora's Other Defenses. ............... 25

V.     CONCLUSION .......................................................................................... 25

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

# TABLE OF AUTHORITIES

## Cases

*A.B. Dick Co. v. Burroughs Corp.*,
713 F.2d 700 (Fed. Cir. 1983) ........................................................ 15

*Alice Corp. v. CLS Bank Int'l*,
573 U.S. 208 (2014).............................................................. 19, 20

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001) ........................................ 7, 8, 9, 19

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................ 7, 25

*Arctic Cat Inc. v. Polaris Indus., Inc.*,
795 F. App'x 827 (Fed. Cir. 2019) ..................................................... 9

*Bio-Rad Labs., Inc. v. Int'l Trade Comm'n*,
998 F.3d 1320 (Fed. Cir. 2021) ....................................................... 18

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)............................................................. 7, 19, 25

*Crocs, Inc. v. Int'l Trade Comm'n*,
598 F.3d 1294 (Fed. Cir. 2010) ....................................................... 24

*Cytyc Corp. v. TriPath Imaging, Inc.*,
505 F. Supp. 2d 199 (D. Mass. 2007)................................................. 22

*Drop Stop LLC v. Jian Qing Zhu*, No. CV 16-07916 AG (SSx),
2017 WL 11501883 (C.D. Cal. Aug. 28, 2017) ............................................. 7

*Fraunhofer-Gesellschaft zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*,
138 F.4th 1373 (Fed. Cir. 2025) ..................................................... 25

*Free Stream Media Corp. v. Alphonso Inc.*,
996 F.3d 1355 (Fed. Cir. 2021) ........................................................ 8

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*,

    909 F.2d 1464 (Fed. Cir. 1990) ........................................................ 24

*Home Diagnostics, Inc. v. LifeScan, Inc.*,

    381 F.3d 1352 (Fed. Cir. 2004) .............................................. 12, 13

*In re NTP, Inc.*,

    654 F.3d 1279 (Fed. Cir. 2011) ..................................................... 20

*Janssen Pharms., Inc. v. Tolmar, Inc.*, 718 F. Supp. 3d 394 (D. Del. 2024),

    *reconsideration denied sub nom.*, *Janssen Pharms., Inc. v. Tolmar, Inc.*,

    No. CV 21-1784-WCB, 2024 WL 2972832 (D. Del. June 13, 2024)......... 22

*Jones v. Hardy*,

    727 F.2d 1524 (Fed. Cir. 1984) ...................................................... 8

*Kalman v. Kimberly-Clark Corp.*,

    713 F.2d 760 (Fed. Cir. 1983),

        *overruled in part on other grounds*,

        *SRI Int'l v. Matsushita Elec. Corp. of Am.*,

    775 F.2d 1107 (Fed. Cir. 1985) (en banc) ...................................... 20

*KSR Int'l Co. v. Teleflex Inc.*,

    550 U.S. 398 (2007).............................................................. 21, 23

*Lujan v. Nat'l Wildlife Fed'n*,

    497 U.S. 871 (1990)................................................................. 7

*Microsoft Corp. v. i4i Ltd.*,

    564 U.S. 91 (2011)................................................................. 8

*Net MoneyIN, Inc. v. VeriSign, Inc.*,

    545 F. 3d 1359 (Fed. Cir. 2008) ................................................. 20

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,

    521 F.3d 1351 (Fed. Cir. 2008) ................................................... 9

*Paper Converting Mach. Co. v. Magna-Graphics Corp.*,

    745 F.2d 11 (Fed. Cir. 1984) ..................................................... 17

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

*Persion Pharms. LLC v. Alvogen Malta Operations Ltd.*,
945 F.3d 1184 (Fed. Cir. 2019) ..................................................................... 21

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ..................................................................... 13

*Sanofi, LLC v. Watson Labs. Inc.*,
875 F.3d 636 (Fed. Cir. 2017) ....................................................................... 18

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
242 F.3d 1337 (Fed. Cir. 2001) ..................................................................... 13

*ScriptPro LLC v. Innovation Assocs., Inc.*,
833 F.3d 1336 (Fed. Cir. 2016) ..................................................................... 13

*Shire, LLC v. Amneal Pharms., LLC*,
802 F.3d 1301 (Fed. Cir. 2015) ..................................................................... 23

*Silicon Graphics, Inc. v. ATI Techs., Inc.*,
607 F.3d 784 (Fed. Cir. 2010) ....................................................................... 20

*SunTiger, Inc. v. Sci. Rsch. Funding Grp.*,
189 F.3d 1327 (Fed. Cir. 1999) ..................................................................... 15

*TEK Glob., S.R.L. v. Sealant Sys. Int'l*,
920 F.3d 777 (Fed. Cir. 2019) ......................................................................... 8

*Unigene Labs., Inc. v. Apotex, Inc.*,
655 F.3d 1352 (Fed. Cir. 2011) .......................................................... 21, 23, 24

*Vaporstream, Inc. v. Snap Inc.*,
No. 2:17-cv-00220 MLH (KSx),
2020 WL 136591 (C.D. Cal. Jan. 13, 2020) .................................................. 19

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996) .............................................................. 8, 10, 13

*Wasica Finance GmbH v. Continental Automotive Systems, Inc.*,
853 F.3d 1272 (Fed. Cir. 2017) ..................................................................... 13

iv                    2:24-cv-08460-MWC (BFMx)

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

**Statutes**

35 U.S.C. § 101 ................................................................................................ 19, 20

35 U.S.C. § 102 ................................................................................................ 19, 20

35 U.S.C. § 103 ................................................................................................ 19, 21

35 U.S.C. § 112(d) .................................................................................................. 9

35 U.S.C. § 271(b) ............................................................................................ 17, 18

35 U.S.C. § 271(c) ................................................................................................. 17

35 U.S.C. § 282 ....................................................................................................... 8

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................ 7

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

Plaintiff AMP Plus, Inc. d/b/a ELCO Lighting ("ELCO") submits this memorandum in support of its renewed motion for summary judgment that Nora's Pearl products infringe Claims 15 and 19 of ELCO's U.S. Patent No. 11,092,326 ("'326 Patent"), and that Nora cannot prove its various counterclaims and defenses.

## I.     INTRODUCTION

Nora designed its infringing Pearl module by copying ELCO's Koto product (marked "patent pending"). Nora's engineer

First, there is no *genuine* dispute that Nora's Pearl products satisfy each limitation of Claims 15 and 19. In its counterclaim seeking declaratory judgment of noninfringement, Nora challenges only the "holder" limitation, but                                                                                          which serves as the "holder." And while the asserted claims do not recite a "trim," Nora itself confirms that the Pearl's "holder" is separate and distinct from the "trim."

Second, Nora cannot support its counterclaim for invalidity. The Patent Office rejected Nora's invalidity challenges to Claims 15 and 19, which survived Ex Parte Reexamination ("EPR"). Those claims were rewritten in independent form, but are word-for-word the same as in the original patent. Nora does not assert those rejected invalidity challenges here and has not substantiated any other invalidity arguments. Summary judgment is warranted.

Third, Nora cannot substantiate any other defenses, which should be rejected.

To the extent the Court does not grant full relief, ELCO requests a finding under Rule 56(g) as to those issues and facts (and elements) that are established.

## II.     BACKGROUND

### A.     ELCO Developed Its Patented Koto Product.

ELCO is a California corporation located in Vernon, California that makes, and sells lighting fixtures. SUF 1. One of ELCO's lines of lighting products is the Koto System ("Koto"). SUF 2. Designed by Brandon Cohen, Koto is a high-end

1                                   2:24-cv-08460-MWC (BFMx)

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

residential LED downlight system with a small face that allows for glare-free downlighting and adjustable options that maximize flexibility when designing a project. SUF 3. Koto includes an integrated, preassembled driver (for powering the LED) that attaches to a heatsink module having a larger top portion that transitions to a smaller bottom portion, and connects to a trim. SUF 4. The integrated driver and the transitioning heatsink assembly allow for increased efficiencies for dissipating heat from the LED while maintaining high lumen (light) output. SUF 5. The design of the heatsink on the module also allows for adjustment without interfering with the trim. SUF 6. With its adjustability, Koto can be used either with new construction or as a "retrofit" that replaces earlier installations. SUF 7. Whereas other devices require pre-installation of specialized housings early in the construction process, Koto is compatible with standard housings. SUF 8.

ELCO also owns the '326 Patent, which covers (among other things) the Koto and the technology embodied therein. SUF 9. Issued on August 17, 2021, the '326 Patent is entitled "Integrated Lighting Module." SUF 10. The patent names Brandon Cohen as the sole inventor. *Id.* The '326 Patent is a continuation of, and claims priority to, an earlier application filed on June 21, 2019. SUF 11.

The '326 Patent includes a drawing (Fig. 1) of ELCO's Koto that is labeled "Patent Pending." SUF 12. The '326 Patent discloses various non-exhaustive embodiments. SUF 13. Among other things, the patent discloses an integrated lighting module with a heat sink module, where the diameter of the upper finned portion is larger than a diameter of bottom portion. SUF 14. In some embodiments, the driver housing is located entirely above the heat sink module. SUF 15. In some embodiments, the diameter of the upper portion of the heat sink module is substantially the same as the diameter of the driver housing.



FIG. 1

2                    2:24-cv-08460-MWC (BFMx)

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

SUF 16. Taken together, these elements allow for increased heat dissipation efficiencies and increased lumen output, while being configured for a specific sized trim, such as the MR16 sized trim. SUF 17.

As explained below, ELCO asserts Claims 15 and 19 through this motion. At a high level, Claims 15 and 19 recite an integrated lighting module with various components, including a driver housing to receive a driver, which is configured to provide electrical power to an LED. SUF 18. They further recite a heat sink configured for receiving the LED and transferring away heat generated by the LED. The heat sink has an upper portion with a larger diameter and a lower portion with a smaller diameter, wherein the lower portion transitions into the upper portion. SUF 19. They also recite that the LED emits light, that a conical optical reflector reflects and directs light from the LED, and that the LED is disposed above a top-hole of the optical reflector and underneath the heat sink. SUF 20. The module of Claims 15 and 19 also includes a "holder" that has side walls that receive a bottom region of the lower portion of the heat sink. SUF 21.

Claim 15 also recites, in addition to the common elements of Claims 15 and 19, that when the driver housing is attached to the heat sink, the heat sink is attached to the LED, and the heat sink is attached to the holder with the reflector disposed between the heat sink and the holder. SUF 22. Claim 15 additionally recites that the driver housing is located at the top of the module, the holder is located at the bottom, and the driver housing is located entirely above the heat sink. SUF 23.

Claim 19 also recites, in addition to the common elements of Claims 15 and 19, that the diameter of the upper portion of the heat sink module is substantially similar to the diameter of the driver housing. SUF 24.

**B.**

Nora is one of ELCO's direct competitors and also sells lighting fixtures. SUF 25. In particular, Nora sells the infringing Pearl LED Retrofit Series LED downlights ("Pearl"). SUF 26. Nora offers various versions of Pearl, but it asserted

3                    2:24-cv-08460-MWC (BFMx)

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

that all versions are the same for purposes of the infringement analysis. SUF 27.[1] Nora's Pearl directly competes with ELCO's Koto. SUF 28.

Nora designed the Pearl based on ELCO's Koto.

ELCO provided Nora with repeated infringement notices starting September 10, 2021. SUF 32-42. Nora also received a copy of the November 11, 2021 cease-and-desist letter that went to its sales representatives. SUF 33.

On February 21, 2022, Nora threatened to file a petition for Post Grant Review ("PGR") challenging the '326 Patent's validity. SUF 34. Nora sent ELCO a draft PGR petition, which challenged validity based on a single ground that relied on Nora's own "Iolite Retrofit" in combination with two other references. SUF 35. Nora stated it would refrain from filing the PGR petition if "ELCO provides a covenant not to assert" the patent and related patents. SUF 36. ELCO did not provide such a covenant, but Nora never filed its PGR petition. SUF 37. Nora's invalidity challenges asserted in this action and in the EPR did not include any of the grounds or prior art references from Nora's draft PGR petition. SUF 38.

ELCO sent further letters, including a January 2, 2024 cease-and-desist. SUF 39. Nora promised to "provide a response," but none was forthcoming. SUF 40. After further follow-up, Nora responded on January 18, 2024, that it was still "evaluating and will reply in due course," but Nora did not reply. SUF 41-42.

Notably, throughout the pre-suit correspondence, Nora never identified any claim limitation that was supposedly missing from Nora's Pearl. SUF 43. To be

---

[1] Nora has indicated that it redesigned its Pearl earlier this year. Those redesigned products are not the subject of this Motion.

sure, there is no pre-suit correspondence wherein Nora contended that its "Pearl" products do not satisfy the "holder" limitation that Nora now challenges. SUF 44.

### C.   ELCO Sues Nora for Willful Patent Infringement.

On October 1, 2024, having heard nothing further from Nora, ELCO sued for willful infringement. SUF 45. Nora responded with counterclaims for declaratory judgment of noninfringement and invalidity. SUF 46. In asserting noninfringement, Nora focuses on the "holder" limitation, asserting that the Pearl does not infringe because it "connect[s] the heat sink directly to the trim." SUF 47. For its invalidity counterclaim, Nora relies on three prior art references specified therein. SUF 48.

The parties agreed to seek invalidity and infringement contentions via interrogatories. SUF 49. In response to Nora's Interrogatory 13, ELCO provided infringement contentions on April 10, 2025, asserting (among other things) Claims 15 and 19. SUF 50. Notably, Nora's Answer and RFA responses admit that certain claim elements are satisfied, including Pearl's LED and reflector. SUF 51.

Meanwhile, on February 14, 2025, ELCO propounded Interrogatory No. 7 seeking the factual bases for Nora's noninfringement contentions as well as any claim construction arguments. SUF 52. Nora's initial response provided no information. SUF 53. On March 31, 2025, Nora amended its response with conclusory challenges to other various claim elements without explanation. SUF 54. On June 22, 2025, Nora served a second supplemental response that just incorporates "prior responses . . . and provides no further update." SUF 55. In meeting and conferring with respect to the instant summary judgment motion, ELCO confirmed that it was seeking summary judgment based on Nora's contentions. On June 16, 2026, Nora served its third supplemental response, which fails to identify any new noninfringement arguments. SUF 56.

On May 30, 2025, ELCO deposed Nora engineer Danny Duong. SUF 57.

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

[REDACTED] As also detailed below, infringement is further confirmed by the expert testimony of Dr. Katona.

On June 18, 2026, ELCO moved for summary judgment. Dkt. 81. On June 25, 2026, this Court granted Nora's Rule 12(c), finding that ELCO's "allegation of infringement is a near-exact recitation of the terms of Claim 1" and affording ELCO leave to file an amended complaint. Dkt. 88 at 8, 10. The Court also denied ELCO's summary judgment motion as moot, but directed that ELCO may renew that motion "upon filing an adequate amended Complaint." *Id.* at 10. ELCO filed its amended complaint on July 16, 2026. Dkt. 89. It now renews its summary judgment motion.

**D.      Nora Cannot Prove Its Counterclaims or Any Defenses.**

On February 14, 2025, ELCO also propounded Interrogatory 10 seeking Nora's invalidity contentions. SUF 59. Nora's initial response just points to Nora's counterclaims. SUF 59. Nora later supplemented with a list of 36 patents and patent applications, without explaining the relevance of any. SUF 61. Nora also added that it "is aware of the prior art cited on the face of the '326 Patent," without any analysis or other information. SUF 62. Nora also briefly noted its never-filed PGR petition, but did not assert any of those grounds here. SUF 63. Nora provided a further supplement on June 22, 2025, that "incorporates by reference all prior responses … and provides no further response." SUF 64. Then, on June 16, 2026, Nora served a third supplement, again identifying seven references without explanation. SUF 65.

Meanwhile, on May 9, 2025, Nora filed its EPR petition. SUF 66. This Court granted Nora's motion seeking a stay pending resolution of that EPR. Dkt. 49. The EPR concluded with a certificate confirming the validity of Claims 15 and 19 as they were originally issued.  SUF 67. Claims 15 and 19 (which were originally written as dependent from Claim 1) were rewritten in independent form. SUF 68. In other words, Claims 15 and 19 in the Reexamination Certificate are, word-for-word, the same originally issued Claims 15 and 19.

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

Notably, when seeking a stay pending EPR, Nora previously confirmed that it does not assert in this case any of the prior art that Nora asserted in the EPR. SUF 69. Further, in connection with the EPR, ELCO submitted all of the patents and printed publications that Nora had identified. SUF 70.

## III.    LEGAL STANDARDS

### A.    Summary Judgment

"Summary judgment is as appropriate in a patent case as in any other." *Drop Stop LLC v. Jian Qing Zhu*, No. CV 16-07916 AG (SSx), 2017 WL 11501883, at *2 (C.D. Cal. Aug. 28, 2017). "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The nonmoving party cannot just rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Summary judgment should be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### B.    Patent Infringement

An infringement analysis involves two steps. First, the Court construes any disputed claim terms. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001). Second, the properly construed claims are compared

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

with the accused product. *Id.* To construe claims, courts start with the intrinsic record, including the patent and its file history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). In appropriate circumstances, the Court may also consider extrinsic sources, such as treatises, dictionaries or other relevant materials, as well as expert testimony. *Id.* at 1583. Claims are construed from the perspective of a "Person of Ordinary Skill in the Art" (or "POSITA"). *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1367 (Fed. Cir. 2021). "An accused product infringes a claim if it embodies each claim element or its equivalent." *TEK Glob., S.R.L. v. Sealant Sys. Int'l*, 920 F.3d 777, 784 (Fed. Cir. 2019).

### C. Invalidity

Patents are presumed valid. 35 U.S.C. § 282. Overcoming this presumption requires clear and convincing evidence. *Microsoft Corp. v. i4i Ltd.*, 564 U.S. 91, 102-03, 111-12 (2011). Further, each claim is separately presumed valid. *Jones v. Hardy*, 727 F.2d 1524, 1528 (Fed. Cir. 1984). The legal standards for Nora's various invalidity challenges are discussed below in more detail.

## IV. ARGUMENT

### A. Nora's Pearl Infringes Claims 15 and 19.

Claims 15 and 19 are asserted here. Infringement is assessed on a claim by claim basis, and each claim stands on its own. *Amazon.com*, 239 F.3d at 1351 ("infringement and validity must be performed on a claim-by-claim basis."). Here, infringement of Claims 15 and 19 is confirmed by the testimony of Nora's own engineer (Mr. Duong); Nora's admissions, discovery responses and documents; the expert testimony of Dr. Katona; and even a visual inspection of the accused Pearl Product. There is no genuine dispute that each element of Claims 15 and 19 is present in the Pearl and, therefore, summary judgment is warranted.

For reference, ELCO assigned letters [A] through [I] to the claim limitations. Limitations [A] through [F] are shared by Claims 15 and 19. Claim 15 also recites limitations [G] and [H], whereas Claims 19 recites limitation [I]. As noted, Claims

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

15 and 19 share a number of claim limitations, as both claims were previously dependent on (original) Claim 1. *See* 35 U.S.C. § 112(d) ("A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers."). In the Reexamination, these claims were rewritten in independent form, without any changes to the scope (or wording) of either claim.

Again, the first step of an infringement analysis involves claim construction. *Amazon.com*, 239 F.3d at 1351. But "courts are not (and should not be) required to construe ***every*** limitation present in a patent's asserted claims. . . . . Rather, claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (cleaned up). Where all claim terms are readily understandable given their plain and ordinary meaning, no claim construction may be necessary. *Arctic Cat Inc. v. Polaris Indus., Inc.*, 795 F. App'x 827, 830 (Fed. Cir. 2019) (affirming a PTAB ruling "that it was not necessary to construe the claims expressly and that the claims would be given their ordinary and customary meaning"). Here, apart from the "holder" limitation, Nora has not suggested that any claim construction is necessary. [2] Thus, ELCO addresses construction of the "holder" in connection with Limitation [F] below.

       **1.**      **The Pearl Meets the Common Limitations [A] through [E].**

Claims 15 and 19 recite an "integrated lighting module" (preamble) having [A] a "driver housing" with a "volume" "configured to receive a driver," [B] a "heat sink module," [C] an LED element, [D] "at least one optical reflector," [E] the LED is under the heat sink and above the reflector, and [F] a "holder," with each element further defined in the claim. SUF 71. In the parties' pre-suit correspondence, Nora

---

[2] Interrogatory 7 seeks "an identification and explanation of any claim interpretation" for Nora's noninfringement contentions. SUF 52. Nora's responses did not raise any noninfringement arguments based on claim construction. SUF 53.

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

did not dispute any of these limitations. SUF 43. Likewise, in the pleadings and in its original interrogatory responses, Nora did not challenge any limitation other than the "holder" (discussed below). SUF 72. Nora subsequently amended its interrogatory responses to dispute other elements, but only in conclusory form. SUF 73. Uncontroverted evidence confirms that each element is satisfied.

As an initial matter, Claims 15 and 19 start with a preamble. "[A]s a general rule preamble language is not treated as limiting." *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1347 (Fed. Cir. 2012). Nora has never contended that the preamble is limiting, nor has it identified any basis for such a construction. SUF 74.  In any event, the Pearl is an integrated lighting module. SUF 75.

The Pearl also includes element [A], namely "a driver housing that has first side walls, a first top that caps the first side walls; wherein the first side walls and the first top substantially surround a first volume of the driver housing, wherein the first volume is configured to receive a driver that is configured to provide electrical power to a light emitting diode element." SUF 76. Nora admits

) that the Pearl has a "housing that receives a driver, and that the driver is configured to provide electrical power to a[n] [LED] element." SUF 77.



The housing's "flat top and the cylindrical sidewalls…enclose the driver."

May 30, 2025  11:39:52AM

Figure A.2

*Vitronics*, 90 F.3d at 1583 (claim interpretation that excludes preferred embodiment

10                    2:24-cv-08460-MWC (BFMx)

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

"is rarely, if ever, correct.").

SUF 80.

The Pearl also has element [B]. SUF 81. Nora admits the Pearl has a "heat sink" configured to receive the LED, which transfers heat away from the LED.[3] SUF 82. Nora admits the Pearl's heat sink has a portion with a larger exterior diameter and a portion with a smaller exterior diameter, and that the housing is configured to attach to the heat sink. SUF 83



Figure B.5

SUF 84.

Elements [C]-[D] also read on Nora's Pearl. SUF 85. Nora admits limitation [C], *i.e.*, that the Pearl has an LED configured to emit light. SUF 86. Nora also admits limitation [D], *i.e.*, that the Pearl "includes at least one optical reflector that is substantially conical in shape configured for reflecting and directing at least some light from the light emitting diode element out of a" "bottom" "of the at least one optical reflector," as recited in Claims 15 and 19. SUF 87.

The Pearl also meets Limitation [E], *i.e.*, it has an LED element "disposed above a top-hole of the at least one optical reflector and underneath the heat sink module, wherein the top-hole is located at a top of the optical reflector." SUF 88.

SUF 89.

---

[3] Limitation [B] recites "a heat sink module that is configured for receiving the light emitting diode element and for transferring heat away from the light emitting diode element, wherein the heat sink module has an upper portion that has a larger exterior diameter that is larger than a smaller exterior diameter of a lower portion of the heat sink module; wherein the lower portion transitions into the upper portion; wherein a first bottom portion of the driver housing is attachable to a second top, wherein the second top is a top of the heat sink module." SUF 81.

11                    2:24-cv-08460-MWC (BFMx)

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

SUF 90. The claim elements are also confirmed by Dr. Katona. SUF 91. At a minimum, ELCO requests an order that each of these elements is satisfied. *See* Fed. R. Civ. P. 56(g).

**2.    The Pearl Meets Common Limitation [F] ("Holder").**

Nora focuses its noninfringement arguments on Limitation [F], but Nora's arguments are little more than a sideshow. Under either party's proposed claim construction, there is no dispute that Nora's Pearl includes a "holder," which is separate and apart from the Pearl's "trim."

There is also no genuine dispute that the Pearl's "holder" has "side-walls that substantially surround" a "volume" "configured to receive at least a bottom region of the lower portion of the heat sink module," where the holder is "open" at its top and bottom. SUF 92. The Pearl meets Limitation [F].

***Step 1 (Claim Construction): Holder Takes Its Plain Meaning.***

There is a "heavy presumption" in favor of the ordinary meaning of claim terms. *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1355 (Fed. Cir. 2004). In ruling on Nora's Rule 12(c) motion, the Court explained that "the '326 Patent requires a 'holder' as an essential element of Claim 1, which is a distinct and separate component from a 'trim.'" Dkt. 88 at 7. As the Court noted, some claims (including Claims 27, 34 and 41) specifically recite an integrated lighting module "and a trim." *Id.* at 6. However, Claims 15 and 19 (which are the asserted claims), as well as Claim 1, do not recite a "trim" at all. Therefore, while ELCO agrees that the holder is a distinct element, ELCO respectfully submits that it would be erroneous to construe the "holder" ***in relationship to a trim***, which is nonexistent in some claims. Doing so would erroneously incorporate a "trim" into claims where none is recited, and it would render the "and-a-trim" language obsolete in the claims where a "trim" is positively recited.

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

It is well-settled that "different claims could be directed to covering these different aspects of the invention. Not every claim must contain every limitation or achieve every disclosed purpose." *ScriptPro LLC v. Innovation Assocs.*, 833 F.3d 1336, 1342 (Fed. Cir. 2016). The Federal Circuit has explained that "one of the cardinal sins of patent law" is "reading a limitation from the written description into the claims." *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001). Thus, the Federal Circuit has "repeatedly warned against confining the claims to" embodiments recited in the specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc). "Absent a clear disavowal in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language." *Home Diagnostics*, 381 F.3d at 1358.

One of ordinary skill in the art, reading the '326 Patent, would know and understand that trims are often used with lighting systems, but they are not required. SUF 95. Mr. Duong explains that ▮▮▮▮▮▮▮▮▮▮▮ SUF 96. Some installations do not include a trim. SUF 97. The specification of the '326 Patent includes examples of embodiments that do not require a trim. SUF 98. Claims are a part of the specification. *See, e.g.*, *Vitronics,* 90 F.3d at 1582 (quotation omitted). As an example, Claim 1 describes an embodiment that is silent about the existence of a trim. SUF 99. Thus, one of ordinary skill would understand that the module in Claims 15 and 19 could include, but does not require, a trim. SUF 100.

Defining the "holder" in reference to a "trim" would also render the "***and a trim***" language superfluous in the claims where that language is positively recited. *See, e.g.*, *Wasica Finance GmbH v. Continental Automotive Systems, Inc.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017) (noting that it is "highly disfavored to construe terms in a way that renders" limitations "void, meaningless, or superfluous"). To wit, Claims 27, 34 and 41 are essentially the same as Claims 1, 15 and 19 (respectively), except that they additionally recite "and a trim." If the "holder" in Claims 1, 15 and 19 were construed to require a "holder" that is separate and distinct

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

from a "trim," that would render Claims 27, 34 and 41 superfluous. ELCO submits that "holder" does not require any construction and should not be defined in relation to a "trim." SUF 101.

There is no reason to define "holder" beyond its plain and ordinary meaning. Nonetheless, characterizing "holder" in relation to a trim would not help Nora's noninfringement argument. The Pearl satisfies the "holder" limitation either way.

### *Step 2: The Pearl Satisfies the "Holder" Limitation.*



The holder (referred to by Mr. Duong as the "securing piece").

May 30,2025 12:07:53PM

Figure F.1

There is no genuine dispute that Pearl's trim component includes a "holder" which is distinct and separate from the Pearl's.

SUF 102. As required by Claims 15 and 19, Pearl's holder (                    is "open" at the top and bottom, and has circular "side-walls" surrounding the area that receives the "bottom region of the lower portion of the heat sink module." SUF 92. As Dr. Katona explains, the Pearl's                    is similar to embodiments of the "holder" shown in the '326 Patent. SUF 103. In the Pearl (like in the specification of the '326 Patent), the                    threads onto the bottom of the heat sink module. SUF 104. Through this "holder," the Pearl's trim is "threaded onto the module." SUF 105. Thus, the Pearl includes a "holder" as recited in Limitation [F].

The                    is not the "trim." As Mr. Duong explained,

14                    2:24-cv-08460-MWC (BFMx)

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ SUF 108.

Nora argues that this ▓▓▓▓▓▓▓ cannot satisfy the "holder" limitation because it is part of the "trim" assembly. But Nora cannot evade a finding of infringement by connecting a trim to the "holder." "It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device." *A.B. Dick Co. v. Burroughs Corp.*, 713 F.2d 700, 703 (Fed. Cir. 1983). "If a claim reads merely on a part of an accused device, that is enough for infringement." *SunTiger, Inc. v. Sci. Rsch. Funding Grp.*, 189 F.3d 1327, 1336 (Fed. Cir. 1999). "[A]ny other reasoning would allow an infringer to avoid infringement merely by adding additional elements to an infringing device." *Id.* There is no genuine dispute that the Pearl includes a "holder," which is all that Limitation [F] requires. For purposes of Claims 15 and 19, it makes no difference whether the trim assembly is also connected to the holder.

Previously, Nora ***admitted*** that the Pearl product has a "holder" and "trim" as recited in Claims 15 and 19. According to engineer Duong, the holder+trim assembly for the Pearl product uses the same holder+trim assembly from Nora's "Iolite Retrofit." SUF 109. In its draft PGR petition, Nora argued that the "holder" portion in Nora's "Iolite Retrofit" satisfies the "holder" limitation in the asserted claims. SUF 110. Figure F.5 is reproduced from



*Figure F.5*

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

Nora's draft PGR petition, where Nora labels the "Holder" separately from the "Trim." SUF 111. According to engineer Duong, the same "Holder" and "Trim" are also in the Pearl. SUF 112.[4]

In sum, there is no genuine dispute that the Pearl includes a "holder" as recited in Limitation [F]. And while the asserted claims do not positively recite a "trim," there is also no genuine dispute that the Pearl's "holder" is separate and distinct from the Pearl's trim.

### 3.    The Pearl Includes the Remaining Limitations of Claim 15.

The Pearl also meets the two additional elements [F] and [G] of Claim 15. SUF 113. Even in its most recent (6/16/2026) supplement, Nora has never disputed these elements. SUF 114. On the contrary, Mr. Duong

SUF 115.

The remaining element of Claim 15 is also apparent from a visual inspection of the Pearl itself, and ELCO's expert confirms this. SUF 116. The integrated lighting module has an overall length, wherein with respect to the overall length, the driver housing is located at an overall top of the integrated lighting module and the holder is located at an overall bottom of the integrated lighting module, such that the driver housing and the holder are disposed opposite of each other, and such that the driver housing is located entirely above the heat sink module. SUF 117.

### 4.    The Pearl Includes the Remaining Limitation of Claim 19.

Dr. Katona also shows that the Pearl includes the limitation [I]. SUF 118. Mr. Duong

---

[4] Nora has not pursued this invalidity theory because the "Iolite Retrofit" lacks other claim elements, and the evidence shows that Nora *copied* ELCO's patented Koto module to create the "Iolite Koto," which was later renamed the Pearl. SUF 29-31.

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

SUF 119. Again, even in its most recent supplemental interrogatory response, Nora has not disputed this element. SUF 120.

In sum, there is no factual dispute—much less a genuine dispute of material fact—that Nora's Pearl infringes Claims 15 and 19 of the '326 Patent.

### 5. **Nora Directly and Indirectly Infringes.**

The infringing Pearl includes what Nora calls the ▮▮▮▮▮ (which includes the driver, heat sink, and LED chip) and the "trim" assembly (with the holder and trim). SUF 121. Together they form the complete assembly for Pearl. SUF 122. ▮▮▮▮▮ SUF 123. Nora directly infringes the '326 Patent by making, using, offering to sell and selling the complete product. 35 U.S.C. § 271(a).

Nora also produced a standalone ▮▮▮▮▮ and suggested that this "assembly" is sometimes sold separately. SUF 124. The sale of a ▮▮▮▮▮ also *indirectly* infringes Claims 15 and 19 of the '326 Patent. Those products should also be adjudicated as infringing.

An accused infringer cannot escape liability by separately selling components of the invention and relying on third parties to put the pieces together. *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 19 (Fed. Cir. 1984) (components of machine infringe when are ready for assembly and serve "no useful noninfringing purpose"). In such circumstances, an accused infringer can be liable for indirect infringement, including under theories of "contributory" and "induced" infringement. 35 U.S.C. § 271(b)-(c). Both apply here.

Contributory infringement under 35 U.S.C. § 271(c) requires proof that (1) defendant had knowledge of the patent, (2) defendant had knowledge of patent infringement, and (3) the accused product is not a staple article or commodity of

17                    2:24-cv-08460-MWC (BFMx)

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

commerce suitable for a substantial noninfringing use. *Bio-Rad Labs., Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1335 (Fed. Cir. 2021).

As to the first two elements, Nora knew of the '326 Patent and its infringement from ELCO's initial cease-and-desist letter. SUF 125. Further, Mr. Duong

SUF 31.

SUF 30. There is no genuine dispute that Nora knew of the patent and had knowledge of infringement. There is also no genuine dispute as to the third element: indeed, the

is not a staple article or commodity of commerce, and it can ***only*** be used with Pearl-compatible trim assemblies having the                  SUF 126.

Similarly, "[i]nduced infringement under 35 U.S.C. § 271(b) requires proof of underlying direct infringement, as well as proof that (1) 'the defendant knew of the patent,' (2) the defendant knew or should have known that 'the induced acts constitute patent infringement,' and (3) the defendant 'possessed specific intent to encourage another's infringement.'" *Bio-Rad*, 998 F.3d at 1335 (quoting *Sanofi, LLC v. Watson Labs. Inc.*, 875 F.3d 636, 643-44 (Fed. Cir. 2017)). Here, again, the first two elements are satisfied because Nora had notice of the patent and reviewed ELCO's cease-and-desist letter. SUF 125. Indeed, Nora designs the

to be used with the trim assembly having the holder. As to the third element, Nora's marketing literature touts that Pearl trims are to be used with Pearl modules. SUF 127. As explained above, Pearl modules cannot be used without the compatible trims that include a                  There is no question that Nora intends for the modules to be used with compatible trims having the "holder."

Either theory of indirect infringement also requires a showing of underlying direct infringement by a third party. *Bio-Rad*, 998 F.3d at 1335. Here, Nora's

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

customers directly infringe when installing and using the standalone ▬▬▬▬▬▬▬ in combination with the trim assembly. The "holder" limitation of Claims 15 and 19 is met by the ▬▬▬▬▬▬ that is part of the trim assembly. Nora shows how the components are intended to be used together in its own literature attached to its counterclaims. SUF 128.

In short, Nora directly and, through its customers, indirectly infringes.

**B.      Claims 15 and 19 Are Not Invalid.**

Nora cannot substantiate its invalidity counterclaim, which Nora must prove by "clear and convincing evidence." *Amazon.com*, 239 F.3d at 1358-59. Again, the Patent Office rejected Nora's invalidity challenges to Claims 15 and 19, and Nora is not relying on any of the arguments or prior art from the EPR here. Even in its discovery responses, Nora has not identified any viable theory (much less evidence thereof) to substantiate its burden. The Court should grant summary judgment as to Nora's invalidity counterclaim and affirmative defense. *Celotex*, 477 U.S. at 322.

**1.      <u>The Court Should Reject Nora's Invalidity Defense.</u>**

Nora's counterclaim invokes a number of invalidity theories, including under 35 U.S.C. §§ 101, 102, 103 and 112. Nora cannot substantiate any of these.

**a.      *The claims are not invalid under § 101.***

Section 101 of the Patent Act defines the subject matter eligible for patent protection. Where an accused infringer raises a challenge based on Section 101, courts apply a two-step inquiry: First, the court "determine[s] whether the claims at issue are directed to [a] patent-ineligible concept[]," such as an abstract idea. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 218 (2014). Second, if so, the court "examine[s] the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id. at* 221. "The accused infringer bears the burden of proof on both steps." *Vaporstream, Inc. v. Snap Inc.*, No. 2:17-cv-00220 MLH (KSx), 2020 WL 136591, at *7 (C.D. Cal. Jan. 13, 2020).

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

Nora provides no facts (or even a coherent theory) to support a § 101 invalidity theory. SUF 129. Despite its burden to do so, Nora does not articulate any facts or theory as to either of the two *Alice* steps. Summary judgment is warranted.

### b.    *The claims are not invalid under § 102.*

In challenging a patent's "novelty" under 35 U.S.C. § 102, one must show that the challenged claim is "anticipated." *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F. 3d 1359, 1369 (Fed. Cir. 2008). To do so, an "accused infringer must show by clear and convincing evidence that a single prior art reference discloses each and every element of a claimed invention." *Silicon Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 796 (Fed. Cir. 2010). "It is axiomatic that for anticipation, *each and every* claim limitation must be explicitly or inherently disclosed in the prior art." *In re NTP, Inc.*, 654 F.3d 1279, 1302 (Fed. Cir. 2011) (emphasis in original). Nora fails to identify any such "single prior art reference" that discloses "each and every element" of any claim. SUF 130. Summary judgment is warranted.

Nora's counterclaim identifies three alleged prior art references: the '880 Publication, the '755 Patent, and the NIOB Product. SUF 131. Nora concedes that none of these anticipate any claim. SUF 132. First, Nora concedes that the '880 Publication "does not teach that 'the heat sink module [1600] has an upper portion that has a larger exterior diameter that is larger than a smaller exterior diameter of a lower portion of the heat sink module,'" as required by Claims 15 and 19. SUF 133. Second, Nora admits that the '755 Patent "does not teach that 'the holder is open at both a third top and at a third bottom wherein the third top is a top of the holder, wherein the third bottom is a bottom of the holder,'" as required by Claims 15 and 19. SUF 134. Third, Nora also admits that the NIOB Product does ***not*** anticipate. SUF 135. Nora has not identified any other anticipatory reference either. Thus, summary judgment is warranted. *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 772 (Fed. Cir. 1983), *overruled in part on other grounds, SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107 (Fed. Cir. 1985) (en banc) (affirming

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

summary judgment of no anticipation where the defendant failed to identify a single prior art reference that discloses all claim elements).

### c.   *The claims are not invalid under § 112.*

Section 112 imposes requirements such as a written description, among other things. 35 U.S.C. § 112. Nora offers no facts (or coherent theory) to support a § 112 invalidity argument. SUF 136. Summary judgment is warranted.

### 2.   The Claims Are Not "Obvious" Under § 103.

Section 103 relates to obviousness, and Nora also cannot meet its burden of showing obviousness. A party asserting obviousness must show that the differences over the prior art are such that the claimed invention as a whole would have been obvious before the patent's effective filing date to one of ordinary skill in the art. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007). A claim is invalid "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103. Obviousness is a question of law with underlying factual findings relating to (1) scope and content of the prior art; (2) differences over the prior art; (3) level of ordinary skill in the art; (4) presence or absence of a motivation to combine with a reasonable expectation of success; and (5) objective indicia of non-obviousness. *Id.*; *Persion Pharms. LLC v. Alvogen Malta Operations Ltd.*, 945 F.3d 1184, 1189 (Fed. Cir. 2019).

To survive summary judgment, Nora must do more than simply recite items of prior art. Rather, it must identify specific grounds for obviousness, including noting the specific combinations of art that it relies upon, coupled with an explanation as to why one of ordinary skill in the art would have been motivated to combine those specific references. *Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1361, 1364 (Fed. Cir. 2011). Nora fails to substantiate any obviousness theory, much less one directed to Claims 15 or 19.

21                    2:24-cv-08460-MWC (BFMx)

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

As discussed, Nora's counterclaim asserts an invalidity theory based on three alleged prior art references: the '880 Publication, the '775 Patent, and the NIOB Product. SUF 131. But even in its invalidity contentions, Nora's invalidity arguments are conclusory at best, and Nora fails to explain how any of these references, whether taken together or separately, would render Claims 15 or 19 obvious. SUF 137. And in fact, they do not, for the reasons explained below.

**The NIOB Product is *not* prior art.** Nora bears the "burden of showing by clear and convincing evidence" that each asserted reference qualifies as prior art. *Janssen Pharms., Inc. v. Tolmar, Inc.*, 718 F. Supp. 3d 394, 424 (D. Del. 2024), *reconsideration denied sub nom.*, *Janssen Pharms., Inc. v. Tolmar, Inc.*, No. CV 21-1784-WCB, 2024 WL 2972832 (D. Del. June 13, 2024). Despite multiple inquiries from ELCO, Nora provided no evidence to support that the NIOB Product is prior art. For example, while Nora alleges that the NIOB was part of an Iolite product, it provides no evidence to support that allegation. SUF 138. On the contrary, Mr. Duong ███████████████ SUF 139. To test Nora's assertion, ELCO requested metadata for the NIOB image shown in Nora's invalidity counterclaim. SUF 140. The produced metadata shows that the image was taken in 2025. SUF 141. Because Nora cannot show that the NIOB qualifies as prior art, summary judgment is proper as to any invalidity theory based on the NIOB. *Cytyc Corp. v. TriPath Imaging, Inc.*, 505 F. Supp. 2d 199, 227 (D. Mass. 2007) (granting summary judgment with respect to a reference for which there was no evidence that it qualified as prior art).

**Nora fails to show that these references disclose all of the claim elements.** For example, both in its counterclaim and in its invalidity contentions, Nora fails to address Elements [G] and [H] from Claim 15 or Element [I] from Claim 19, and its discussion of the other claim elements is conclusory at best. SUF 142.

**Nora fails to articulate any motivation for combining the references, or how they could render the claims obvious.** Nora must "show[] that a person of

ordinary skill at the time of the invention would have selected and combined [the] prior art elements [in separate references] in the normal course of research and development to yield the claimed invention." *Unigene*, 655 F.3d at 1360-61. The reason for combining different prior art references is a critical component of an obviousness analysis, requiring a party challenging the validity of a patent claim as obvious to provide an explicit analysis of the prior art motivation to combine references. *KSR*, 550 U.S. at 398 (analysis of reason to combine the known elements, as claimed, should be made explicit).

As the Federal Circuit has explained, "Obviousness requires more than a mere showing that the prior art includes separate references covering each separate limitation in a claim under examination. . . . Rather, obviousness requires the additional showing that a person of ordinary skill at the time of the invention would have selected and combined those prior art elements in the normal course of research and development to yield the claimed invention." *Unigene*, 655 F.3d at 1360 (affirming summary judgment of nonobviousness). Here, Nora fails to identify any reason as to why one of ordinary skill in the art would combine these references, much less to achieve the claimed invention. SUF 143. Nora also fails to offer any information regarding the level of ordinary skill in the art. SUF 144. Indeed, the only evidence (███████) confirms that Nora is unaware of any basis for combining these references. SUF 145. Summary judgment is warranted. *See, e.g.*, *Shire, LLC v. Amneal Pharms., LLC*, 802 F.3d 1301, 1308-09 (Fed. Cir. 2015) (affirming summary judgment of nonobviousness where prior art reference "broadly" teaches combining various components but "provides no direction as to which of many possible choices is likely to be successful." (cleaned up)).

**Nora's laundry list of dozens of references does not prevent summary judgment.** As noted above, Nora also supplemented its invalidity interrogatory response with a laundry list of references. Yet, Nora fails to show how these references disclose the claim limitations, how they qualify as prior art, why a

POSITA would be motivated to combine these references, or any other coherent theory of obviousness based on these references. Again, to overcome summary judgment, Nora must identify concrete obviousness grounds—not just a litany of references. *Unigene*, 655 F.3d at 1361, 1364. Nearly five years after receiving notice of infringement, Nora fails to substantiate any obviousness theory.

Furthermore, patents and applications identified by Nora—including its invalidity arguments in its interrogatory responses—were submitted to and considered by the PTO during the EPR, and Claims 15 and 19 were determined to be patentable. SUF 146. "Th[e] burden of [showing invalidity by clear and convincing evidence] is especially difficult when the prior art was before the PTO examiner during prosecution of the application." *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1467 (Fed. Cir. 1990). Nora cannot meet that burden.

Notably, Nora has not relied on any arguments from its never-filed PGR petition. SUF 147. In any event, the never-filed PGR petition was submitted to and considered by the PTO during the EPR, and Claims 15 and 19 were determined to be patentable. SUF 148. Nora's now-abandoned obviousness argument was premised on Nora's own "Iolite Retrofit" product coupled with at least two other products. SUF 149. Nora's own engineer SUF 150. Instead, he SUF 29.

SUF 151.

SUF 152. is strong objective indicia of **non**obviousness. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1311 (Fed. Cir. 2010) (copying can be a "form of flattering praise for inventive features").

Summary judgment is proper as to all of Nora's invalidity challenges.

24                    2:24-cv-08460-MWC (BFMx)

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY

## C.    Summary Judgment Is Proper on Nora's Other Defenses.

Finally, Nora has not substantiated any "affirmative defenses." Nora bears the burden of producing evidence to survive summary judgment with respect to its affirmative defenses. *Celotex*, 477 U.S. at 322. Nora has not provided evidence, facts, or even a coherent explanation for any affirmative defenses. SUF 153.

Nora previously asserted two estoppel-related defenses for its sixth and seventh defenses. Dkt. 19 at 7. Estoppel requires Nora to prove misleading conduct on the part of ELCO, reliance on that conduct by Nora, and resulting material prejudice to Nora. *Fraunhofer-Gesellschaft zur Förderung der angewandten Forschung e.V. v. Sirius XM Radio Inc.*, 138 F.4th 1373, 1378 (Fed. Cir. 2025). Nora has not articulated anything to support such a defense.

ELCO propounded interrogatories seeking Nora's bases for its estoppel defenses, but Nora's initial supplemental responses provided zero. SUF 154. Even after ELCO explained that it would seek summary judgment, Nora confirmed it had not withheld anything on the basis of any objections. SUF 155. Nora then provided another supplemental response that still failed to articulate any misleading conduct, any reliance on that conduct, or resulting material prejudice. SUF 156. Summary judgment is warranted. *Anderson*, 477 U.S. at 250.

## V.    CONCLUSION

ELCO respectfully requests that the Court enter summary judgment that the accused Pearl infringes Claims 15 and 19 of the '326 Patent, and that Nora cannot support any of its affirmative defenses or counterclaims. Only damages and willfulness should remain for trial.

If the Court does not grant all the relief requested, ELCO requests, under Rule 56(g), an order stating the material facts that the Court finds are not genuinely in dispute and treating those as established, including the specific claim elements that are established, the specific invalidity grounds that are rejected, and other affirmative defenses that are rejected.

DATED:  July 17, 2026

By:         */s/ Bruce D. Kuyper*

Guy Ruttenberg
guy@ruttenbergiplaw.com
Bruce D. Kuyper
bruce@ruttenbergiplaw.com
RUTTENBERG IP LAW,
A PROFESSIONAL CORPORATION
1801 Century Park East, Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
Facsimile: (310) 627-2260

*Attorneys for Plaintiff,*
*AMP Plus, Inc. d/b/a ELCO Lighting*

MEMO. ISO ELCO'S RENEWED MSJ OF LIABILITY